(C.D. 2317)

THE LUG ALL COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 21, 1962)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff* and *Alfred A. Taylor, Jr.*, trial attorneys) for the defendant.

Before LAWRENCE, RAO, and FORD, JUDGES

LAWRENCE, Judge: Plaintiff imported certain merchandise, described as anchor plates, single glazing strip, and double glazing strip, which was classified as articles in chief value of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and subjected to duty at the rate of 21 per centum ad valorem.

Plaintiff claims that the articles should be classified in paragraph 312 of said act (19 U.S.C. § 1001, par. 312), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as structural shapes, which have been fabricated for use, or advanced beyond hammering, rolling, or casting, and dutiable at 7½ per centum ad valorem.

The foregoing provisions of the statutes are here set forth.

Paragraph 397 of the Tariff Act of 1930, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:
    Typewriter spools \* \* \*
    Not wholly or in chief value of tin or tin plate:
        Carriages, drays, \* \* \*

\*     \*     \*     \*     \*     \*     \*

        Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum \* \* \*_____ 21% ad val.

Paragraph 312 of said act, as modified by the Torquay protocol, *supra*:

Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel:

Not assembled, manufactured or advanced beyond hammering, rolling, or casting_____ * * *

Machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting_____ 7½% ad val.

Plaintiff also makes alternative claims for classification in paragraphs 304 and 312, as modified, quoted below:

Paragraph 304 of said act, as modified by the Sixth protocol, *supra*:

Sheets and plates and steel not specially provided for (except circular saw plates), valued over 16 cents per pound_____ 11½% ad val.

Paragraph 304 of said act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462:

* * * pressed, sheared, or stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping; * * *

Valued above 5 and not above 8 cents per pound_____ 12½% ad val.

*          *          *          *          *          *          *

Paragraph 312 of said act, as modified by the Sixth protocol, *supra*:

Sashes and frames of iron or steel_____ 14% ad val.

The following exhibits illustrating the character and use of the imported merchandise were introduced by plaintiff:

Exhibit 1—anchor plate.

Exhibit 2—single glazing strip.

Exhibit 3—double glazing strip.

Illustrative exhibit 4—sample illustrating how the anchor plate is used in connection with Handy Angles.

Illustrative exhibit 5—article consisting of two parts of the so-called Handy Angle joined together with a nut and a bolt, without the anchor plate.

Illustrative exhibit 6—article showing the Handy Angle incorporating two anchor plates.

Illustrative exhibit 7—article illustrating how both the single and double glazing strips are used with Handy Angles.

The following exhibits offered by the defendant were received in evidence:

Exhibit A—booklet describing the purposes and uses of the Handy Angle.

Exhibit B—photograph showing use of a Handy Angle.

It appears that the so-called "Handy Angles" were classified as "structural shapes" by the collector of customs, as to which there is no dispute.

The only witness in the case, DeWitt Cox, was called by the plaintiff. The substance of his testimony may be summarized as follows:

As vice president of the plaintiff company, with which he has been a sales representative since 1949, he has sold its products throughout the United States. The company deals in a "* * * line of lightweight, portable hoists, tripods, winches, and 'Handy Angle,' which is a slotted steel angle, a framing material." The witness had gained an intimate knowledge of the nature and uses of the articles represented by exhibits 1, 2, and 3 from having sold the material throughout the United States, developed its uses, and made sales calls in the field to promote the product.

He described exhibit 1, the anchor plate, as a punched piece of cold rolled steel, used to make a strong, rigid joint. When two pieces of Handy Angle (illustrative exhibit 5) intersect, an anchor plate is incorporated in order to obtain three bolting positions, rather than one. This arrangement is represented by illustrative exhibit 4. Anchor plates are used only with Handy Angles. The witness explained that when two pieces of Handy Angle are combined without the use of an anchor plate, a strong, rigid joint is not obtained, as disclosed by illustrative exhibit 5.

The witness described the following uses of anchor plates in conjunction with Handy Angles:

* * * a joint in fences, small buildings, heavy-duty racking, partitions, handtrucks, platforms, motor stands, electrical switch frames. It's such a basic material that it had endless uses and this could go on and on and on.

According to the witness, anchor plates, when combined with Handy Angles, provide maximum strength with little weight, forming a fundamental part of the items above referred to, greatly increasing their strength and rigidity.

The glazing strips, represented by exhibits 2 and 3, are, according to the witness, used only with Handy Angles to attach glass or some other material to a metal framework. The use of the two types of glazing strips (exhibits 2 and 3) in conjunction with Handy Angles is shown by illustrative exhibit 7.

With the use of illustrative exhibit 7, the witness explained that "* * * the glazing strips are holding portions of plexiglass in position to illustrate to a potential customer the way they could use it to hold glass in position, or fiberboard, or whatever they may wish to enclose a framework with."

Plaintiff, in its brief, cites numerous decisions of our appellate court, in which the claim for classification of certain articles as structural shapes has been approved and in others rejected.

In none of the cases to which our attention has been invited has the court endeavored to give a definitive word picture of the term "structural shapes." As stated in *United States* v. *Humble Oil & Refining Co., Leslie B. Canion, et al.*, 46 C.C.P.A. (Customs) 138, C.A.D. 717:

\* \* \* Whether a particular article falls within the meaning of that term [structural shapes] must be determined on the basis of the particular circumstances of the case under consideration, including the purpose for and manner in which the article is used, as well as whether or not it forms a part of a structure.

This concept was cited with approval in *James Loudon & Co., Inc., Arcadia Metal Products, Inc.* v. *United States*, 47 C.C.P.A. (Customs) 73, C.A.D. 731, wherein certain sections of cold rolled, mild steel for use in the installation of sliding glass doors and windows were held not classifiable as structural shapes of steel. In the course of its opinion, the court stated:

It has been repeatedly held that an element designed for use as part of a structure and, when so used, sustains some stresses does *not*, alone, make it a structural shape. *Otis McAllister & Co.* v. *United States*, 27 CCPA 4, C.A.D. 52; *European Trading Co.* v. *United States*, 19 CCPA 82, T.D. 45225; *United States* v. *Humble Oil & Refining Co., Leslie B. Canion, et al.*, 46 CCPA 138, C.A.D. 717. \* \* \*

The court found that the articles, in that case, were primarily and essentially door-guiding elements and that the "\* \* \* relatively minor loads or stresses which they sustain are of a secondary nature and do not entitle them to be classified as structural shapes."

Plaintiff places considerable reliance on the case of *Judson Freight Forwarding Co.* v. *United States*, 20 C.C.P.A. (Customs) 229, T.D. 46038, involving the classification of certain steel articles, having legs or webs less than 3 inches in 20-foot and 30-foot lengths. It appears from the opinion of the court that the angles, in that case, had a great variety of structural uses in ceilings, walls, partitions in buildings, steel trusses, in garages, factories, in skylight construction, bracing of latticed members, columns, sidewalks, and in a variety of other articles requiring light sections. The fact that said steel articles had the capacity to sustain relatively heavy weights and to resist great tension, combined with the uses above described, entitled them to be classified as structural shapes, within the meaning of paragraph 312. The court was of the opinion that Congress made no distinction between light and heavy structural shapes.

As expressed by the court in the *Judson* case, above cited, Congress—

* * * did not intend to limit the term "structural shapes" to such shapes of iron and steel as were used only in large structures, but that it intended to include therein all structural shapes of iron or steel having the "capacity to sustain [relatively] heavy weights or to resist great tension or both," and designed for the utilization of such capacity, to be used as such shapes, and suitable for such use in buildings, bridges, ships, cars, etc., requiring either heavy or light sections, or both, and also in certain "other articles *requiring light sections*" only. [Italics quoted.]

The court held, accordingly, that steel angles, with legs or webs less than 3 inches, were properly classifiable as structural shapes and *eo nomine* provided for in paragraph 312 as angles. The *Judson* case was cited and quoted with obvious approval many years later in *C. J. Tower & Sons* v. *United States*, 42 C.C.P.A. (Customs) 161, C.A.D. 589.

In the case at bar, we are of the opinion that the anchor plates, represented by exhibit 1, are not in themselves structural shapes, within the purview of the cited cases. The record establishes that anchor plates are used in connection with Handy Angles in order to give greater strength and rigidity to the Handy Angles, although it appears that Handy Angles may be used either with or without anchor plates, as demonstrated by illustrative exhibits 4 and 5.

The foregoing considerations lead us to the conclusion that the anchor plates in controversy merely lend rigidity to the Handy Angles but in themselves serve no structural purpose and are not structural shapes in the tariff sense. They were properly classified by the collector of customs as articles in chief value of metal, not specially provided for, in paragraph 397 of the tariff act, as modified, *supra*.

The single and double glazing strips, represented by exhibits 2 and 3, respectively, are likewise used in conjunction with Handy Angles to attach glass or certain other materials to a metal framework, as indicated by illustrative exhibit 7, in which the glazing strips are holding portions of plexiglass in position.

The evidence with respect to the character and use of the glazing strips does not, in our opinion, qualify them as structural shapes, as that term has been judicially interpreted. The classification of glazing strips would seem to be controlled by the decision of our appellate court in the *Loudon* case, *supra*, wherein it was held that certain sections of cold rolled, mild steel for use in the installation of sliding glass doors and windows were not classifiable as structural shapes of steel, but should be classified in paragraph 304 of said act as "steel, not specially provided for."

We have examined numerous cases cited by plaintiff, but find it unnecessary to analyze any others than those above referred to.

The evidence of record is insufficient upon which to judicially determine whether either the anchor plates or glazing strips are pressed, sheared, or stamped shapes, not advanced in value or condition subsequent to stamping, within the provisions of paragraph 304, as alternatively alleged by plaintiff.

The claim in the protest for classification of the articles in issue as steel, not specially provided for, in paragraph 304, as modified by the Sixth protocol, *supra*, not being urged, is deemed abandoned.

The alternative claim that the glazing strips should be classified as sashes and frames of iron or steel, in paragraph 312 of the tariff act, as modified by the Sixth protocol, *supra*, is not supported by the evidence.

Upon the record and for the foregoing reasons, the protest is dismissed as to the claim for classification of the articles as steel, not specially provided for, in paragraph 304, and is overruled as to all other claims.

Judgment will issue accordingly.